## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,               CASE NO. 22-20287
                                       HON. DENISE PAGE HOOD

v.

DEMETRIUS BLACKWELL-ESTERS,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [#25], GRANTING DEFENDANT'S MOTION TO SEVER COUNTS [#26], and DENYING DEFENDANT'S MOTION TO SUPPRESS [#27]

## I.   Introduction

Defendant is charged with two counts of possessing a firearm after having been convicted of a felony, each in violation of 18 U.S.C. § 922(g)(1).  Defendant recently filed three motions: (a) Motion to Dismiss the Indictment under the Second Amendment ("Motion to Dismiss") [ECF No. 25]; (b) Motion to Sever Counts [ECF No. 26]; and (c) Motion to Suppress [ECF No. 27].  The Government has filed a response to each motion, and the Court held a hearing on the motions.  Supplemental authorities were also filed by Defendant after the hearing.

1

## II.    Background

The § 922(g)(1) charges stem from two separate incidents.  The incident giving rise to Count One occurred on September 1, 2021, when police officers arrested him for an unrelated case.  During the execution of the arrest warrant, the Government alleges that Defendant was hiding behind a false wall and the firearms were found next to where Defendant was hiding.  There is no dispute regarding the validity of the September 1, 2021 search warrant.

The incident giving rise to Count Two occurred on April 14, 2022 at a liquor store in Detroit. The Government alleges that Detroit Police Department ("DPD") officer watching a Greenlight surveillance footage showed Defendant in the liquor store with an outline of a pistol in the front pocket of his hooded sweatshirt.  The Government has produced a still shot from the store's surveillance video that shows Defendant with a bulge in the front pocket of his sweatshirt. The Government alleges that Defendant assisted two other individuals in stealing two bottles of liquor from the store and, when the store employee confronted Defendant and the other individuals in the parking lot of the liquors store, Defendant allegedly told the store employee, "stay back. I have a gun." Defendant then allegedly drove off in a Ford Escape.

Later the same day, DPD officers saw Defendant, who was known to DPD officers, standing on the porch of a residence on San Juan Street in Detroit, a

residence with which Defendant is associated.  That night, DPD officer Matthew Webb observed in the driveway of the San Juan residence a vehicle that was similar to the one Defendant drove away from the liquor store earlier in the day.  Officer Webb then observed Defendant running out of the house, but Defendant was apprehended and arrested.  Defendant did not have a firearm on his person at the time of the April 14, 2022 arrest.  Officer Webb then obtained a search warrant for the San Juan residence the evening of April 14, 2022, and five firearms were seized at that address upon execution of the search warrant on April 15, 2022.

## III.   Motion to Dismiss the Indictment under the Second Amendment

Defendant argues that the two counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) should be dismissed in light of the United States Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  Defendant contends that,

> Because possession of a firearm comes within the Second Amendment's "plain text," [his] conduct is presumptively protected. The government will be unable to rebut that presumption. Felon-disarmament laws, which did not appear in the United States until the 20th century, were unknown to the generation that ratified the Second Amendment.

ECF No. 25, PageID.124.  The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Court is not persuaded by Defendant's argument.

3

A. *Bruen*

From the opening paragraph of the *Bruen* opinion, the majority makes clear that the issue before the court was the right of "law-abiding citizens" to carry handguns for self-defense.  The opinion begins:

> In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an **ordinary, law-abiding citizen** to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that **ordinary, law-abiding citizens** have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Bruen*, 142 S. Ct. at 2122 (emphasis added).  The majority subsequently stated that the Second Amendment focuses on the rights of "law-abiding" citizens:

> The Second Amendment "is the very *product* of an interest balancing by the people" and it "surely elevates above all other interests **the right of law-abiding, responsible citizens to use arms**" for self-defense. *Heller*, 554 U.S. at 635, 128 S.Ct. 2783.

*Bruen*, 142 S. Ct. at 2131 (emphasis added).  Specifically noting the plaintiffs before the court, the majority found that the Second Amendment protects "law-abiding" citizens.

> It is undisputed that petitioners Koch and Nash—**two ordinary, law-abiding, adult citizens**—are part of "the people" whom the Second Amendment protects. *See Heller*, 554 U.S. at 580, 128 S.Ct. 2783.

4

*Bruen*, 142 S. Ct. at 2134 (emphasis added).

> None of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent **law-abiding citizens** with ordinary self-defense needs from carrying arms in public for that purpose.

*Id.* at 2150 (emphasis added); *Nevens*, 2022 WL 17492196, at *2.

The Court's holding likewise specifies that the case centers on law-abiding citizens:

> New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents **law-abiding citizens** with ordinary self-defense needs from exercising their right to keep and bear arms. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*Id.* at 2156 (emphasis added).

The concurrences by Justice Alito and Justice Kavanaugh further clarify that *Bruen*: (1) is limited to "law-abiding citizens;" (2) does not impact the holdings in *Heller* or *McDonald*; and (3) does not prohibit governmental regulation of possession of firearms by felons nor extend the rights of felons to possess firearms.

> The Court's exhaustive historical survey establishes that point very clearly, and **today's decision therefore holds that a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for this purpose**.

**That is all we decide**. **Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun**. Nor does it decide anything about the kinds of weapons that people may possess. **Nor have we disturbed anything that we said in _Heller_ or _McDonald v. Chicago_, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns**.

_Bruen_, 142 S. Ct. at 2157 (Alito, J. concurring) (emphasis added).

I join the Court's opinion, and I write separately to underscore two important points about the limits of the Court's decision.

* * * * *

_Second_, as _Heller_ and _McDonald_ established and the Court today again explains, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." _Ante_, at 2133. **Properly interpreted, the Second Amendment allows a "variety" of gun regulations**. _Heller_, 554 U.S. at 636, 128 S.Ct. 2783. As Justice Scalia wrote in his opinion for the Court in _Heller_, and Justice ALITO reiterated in relevant part in the principal opinion in _McDonald_:

> "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.... **[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [Footnote 26: We identify these

presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.]

"We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those in common use at the time. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Heller*, 554 U.S. at 626−627, and n. 26, 128 S.Ct. 2783 (citations and quotation marks omitted); see also *McDonald*, 561 U.S. at 786, 130 S.Ct. 3020 (plurality opinion).

*Bruen*, 142 S. Ct. at 2161–62 (Kavanaugh, J., concurring) (emphasis added).

### B.  Other Courts

Courts nationwide have likewise concluded that *Bruen*'s scope is limited to "ordinary, law abiding citizens" and does not extend to felons. *See, e.g., United States v. Avila*, --- F.4th ---, 2022 WL17832287, at *2 (5th Cir., Dec. 21, 2022) ("there is no binding precedent holding § 922(n) unconstitutional"); *United States v. Perez-Garcia*, 2022 WL 4351967, at *7 (S.D. Cal. Sept. 18, 2022) ("the Nation's historical tradition supports such targeted regulations" as § 922(n)); *United States v. Kays*, 2022 WL 3718519, at *5 (W.D. Okla. Aug. 29, 2022) (finding that there are "proper historical analogues for § 922(n)"); *United States v. Charles*, 2022 WL 4913900, at **11-12 (in rejecting defendant's motion to dismiss pursuant to *Bruen*, the court found that "there is a historical basis for excluding felons from constitutional rights," including under *Heller*, such that "logic demands that society

could also exclude [felons] under the Second Amendment"); *United States v. Nevens*, 2022 WL 17492196, at *2 (C.D. Cal., Aug. 15, 2022) (rejecting defendant's argument that the Second Amendment does not draw a "felon/non-felon distinction" and extends to "all people," finding that "[d]efendant cannot point to any Supreme Court authority holding that the Second Amendment protects felons' right to use firearms in the course of criminal activity").

In *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023), the Eighth Circuit concluded that, considering the Supreme Court's assurances in *Heller* and *McDonald*, felon-in-possession bans are presumptively lawful, and "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."

Other Circuits have ruled different than *Jackson*. In *Range v. Attorney General United States of America*, 69 F.4th 96, 106 (3d Cir. 2023), sitting *en banc*, the Third Circuit found that a person convicted of the felony of making a false statement under Pennsylvania law retained his Second Amendment right to possess a gun. *See also United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *1 (S.D. Miss. June 28, 2023) (finding 922(g)(1) unconstitutional as applied to an individual previously convicted of manslaughter). In *Range*, the dissenters found the majority did not afford proper weight to "the Supreme Court's consistent admonishment that felon bans are 'longstanding' and 'presumptively lawful.'" *Id.* at 114 (Schwartz, J., dissenting); *see also id.* at 119-20 (Krause, J.,

dissenting) ("[T]ime and again, the Supreme Court has acknowledged that the deep roots of felon-possession bans in American history impart a presumption of lawfulness to 18 U.S.C. § 922(g)(1) ... *Bruen* observed that historical analogies must be more flexible when a contemporary regulation implicates 'unprecedented social concerns or dramatic technological changes.'  Section 922(g)(1) is such a regulation, as the lethality of today's weaponry, the ubiquity of gun violence, the size and anonymity of the population, and the extent of interstate travel were unknown at the Founding.") (internal quotations and alterations omitted); *id.* at 141 (Roth, J., dissenting) ("The Court did not, in *Bruen*, overrule its decisions upholding Congress's power to regulate the possession of firearms in interstate commerce. These decisions remain good law.")

In  *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), the Sixth Circuit unambiguously upheld the federal felon-in-possession statute—even after applying the Supreme Court's decision in *Heller*, which first articulated the interpretation of the Second Amendment as guaranteeing an individual's right to possess a firearm to protect one's home. *Heller*, which has not been overturned, placed the burden on the defendant to rebut the presumption that felon-in-possession statutes are constitutional.

The Court finds the rulings by the Third Circuit and the *Bullock* courts unpersuasive and not binding on this Court.  The Court agrees with the dissents in

Range and finds their opinion persuasive.  The Court finds that *Heller* was not disturbed by *Bruen*.

### C.     Conclusion

As the *Nevens* court recognized, the *Bruen* court does not mention that felons would come within "the people" that the Second Amendment protects, nor has the Supreme Court ever recognized the right of felons to use firearms in the course of criminal activity. *Nevens*, 2022 WL 17492196, at *2.  The Court finds that Defendant has failed to demonstrate any authority or interpretation at any time that would support his theory that possession of a firearm by a felon comes within the Second Amendment's "plain text," such that his possession of the firearms is presumptively or conclusively protected.  Given the binding effect of *Carey*, the Sixth Circuit precedent which has not been disturbedt, this Court continues to follow *Heller* finding that § 922(g)(1)'s ban on felons possessing firearms as presumptively lawful.  Defendant's Motion to Dismiss is denied.

## IV.    Motion to Sever Counts

Defendant asserts that significant prejudice resulting in a fundamentally unfair trial will occur if he is tried on both counts because each count involves overwhelming bad act evidence that would be inadmissible in regard to the other count, if tried separately.  Defendant also reveals that, during a recorded interrogation on May 5, 2022, he made inculpatory statements regarding Count II,

but he denied culpability as to Count I.  Defendant contends that, because joinder would result in a manifestly unfair trial, trial on the two counts must be severed.

Defendant represents that the Government concurs that severance is warranted, and the Government did not file a response to the Motion to Sever Counts.  For the reasons stated by Defendant, and because the parties stipulate to the severance of the two counts, the Court should grant the Motion to Sever Counts.

## V.    Motion to Suppress

According to the affidavit authored by DPD officer Webb, probable cause existed to support the April 15, 2022 search because:

> a. While watching a live stream from a Greenlight surveillance camera, DPD officer Blackwell allegedly observed Defendant in a liquor store with an outline of a pistol in the front pocket of his hooded sweatshirt.

> b. Defendant was present when his associate allegedly walked out of the liquor store with two liquor bottles without paying for them.

> c. When confronted by the store owner in the parking lot, Defendant allegedly stated, "Get away, I have a gun." Defendant then allegedly drove off in a Ford Escape.

> d. At some unspecified time later that day, DPD officers saw Defendant standing on the porch of the San Juan residence.

> e. Later that night, DPD officer Webb observed a car parked in the driveway of the San Juan residence. According to the affidavit, the car was similar to the one Defendant was driving earlier that day. DPD officer Webb then observed Defendant run out of the house. Defendant was apprehended and arrested.

DPD officer Webb concluded that evidence of the alleged robbery might be found at the San Juan address, drafted the search warrant affidavit, and a magistrate judge in 36th District Court signed a search warrant for the San Juan address, limited to the liquor store robbery, based on that search warrant affidavit.

Defendant argues that: "[t]he critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Defendant maintains that Officer Webb articulated no basis in the affidavit to establish a nexus between the San Juan residence and Officer Webb's belief that evidence of a robbery would be found at that residence. Defendant acknowledges that a 36th District Court magistrate judge issued the search warrant. Defendant argues, however, that the DPD officers should have known the warrant was facially deficient because it lacked sufficient indicia of probable cause upon which to rely, in violation of the Fourth Amendment. Defendant therefore moves to exclude from evidence all fruits of the April 15, 2022 search. Citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

The Government counters that this case involves "the straightforward proposition that when a person commits a crime, flees to a house (twice) immediately afterward, hides in the house, and stores evidence of the crime in the

driveway of the house, evidence of the crime will probably be found in the house." ECF No. 30, PageID.205. The Government asserts that the Court should deny Defendant's Motion to Suppress because the magistrate judge's determination that probable cause existed was not arbitrarily made.

The Fourth Amendment requires all warrants issued to be supported by probable cause and an "[o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (internal citation omitted)).

When presented with an application for a search warrant, the magistrate judge must evaluate the totality of the "circumstances set forth in the affidavit" to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit submitted to the magistrate judge must "demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th

Cir. 2004) (*en banc*) (internal quotations omitted) (requiring a "minimally sufficient nexus"). District courts reviewing the sufficiency of a warrant application must "ensure that the magistrate judge had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

The Government first asserts that Defendant has not established his interest in the house on San Juan, and he should be required to do so before he can challenge the warrant. Citing *Minnesota v. Carter*, 528 U.S. 83, 88 (1998) (to claim the protection of the Fourth Amendment, a defendant must first demonstrate a legitimate expectation of privacy that is both subjectively held and objectively reasonable). *At the time this memo was completed (Thursday, January 26), Defendant had not responded to this argument (filed on Wednesday, January 25).* For purposes of Defendant's Motion to Suppress, the Court should assume that Defendant has an interest in the house (at a minimum, it is indisputed that the DPD officers associate Defendant with the San Juan residence).

Defendant asserts that the only manner in which the April 15, 2022 search warrant could have established probable cause to search the San Juan residence was if it showed that the two liquor bottles or the firearm allegedly carried by Defendant (that no one saw) would likely be found in the house. Defendant contends that making such an inference in this instance was unreasonable, the search warrant

should not have issued, and the DPD officers executing the search warrant could not have relied on the search warrant in good faith.

According to Defendant, the April 15, 202 "affidavit fails to include facts that directly connect the [San Juan] residence with the suspected [criminal] activity," and "the evidence of this connection is unreliable." *Brown*, 828 F.3d at 384.  Defendant insists that Officer Webb's affidavit contains no information to suggest any ongoing pattern of criminal activity.  Defendant argues that Officer Webb only alleged that Defendant "was tenuously involved in a robbery to gain access to [Defendant's] home," ECF No. 27, PageID.175, which cannot in itself establish probable cause. Citing *Zurcher*, 436 U.S. at 556.

The Court should disagree.  The affidavit indicated that on the day Defendant and associates stole bottles of liquor and he carried and threatened the use of a gun, Defendant and at least one of his unknown coconspirators hid out at the house on San Juan, then rand from the residence when DPD officers arrived.  The affidavit, however, contains more that connects Defendant and the liquor robbery to the house because Officer Webb affirms that Defendant returned to the San Juan residence again that same night – with a (stolen) vehicle that appeared to be the one he had driven away from the liquor store robbery in the driveway.  Defendant again ran away from the DPD officers until he was captured – without evidence of the stolen liquor bottles or a gun on his person.

The Court should conclude that it was not arbitrary for a magistrate judge to conclude that evidence of the crime Defendant committed hours earlier would be found in the place he chose to hide after he ran away from that place without the bottles or a gun on his possession.  The Court should find that demonstrates probable cause to believe that Defendant had left evidence behind. *See United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) ("Much like a bank robber would keep the proceeds and instrumentalities of his robbery in his home, so too could Williams be expected to keep the instrumentalities of his criminal activity at his residence.").

Defendant maintains that *Williams* is distinguishable, noting that the majority emphasized that the police department had evidence the defendant was engaged in "continuing and related illegal firearm activity." *Id*. at 687 (internal quotation marks omitted).  Although there is no evidence of "continuing and related criminal activity" in this case, there is evidence that Defendant twice went to the San Juan address on the date of the liquor store robbery.  And, as noted in the affidavit, Defendant had an instrumentality of his crime—the stolen Ford Escape— at the house on San Juan the second time the DPD officers saw him there (and it was still there when Officer Webb obtained a search warrant to search the house on San Juan).

Defendant also relies on *United States v. Norwood*, 989 F.Supp.2d 570, 575 (E.D. Mich. 2013) (affidavit submitted in support of search of defendant's home "fail[ed] to reference any criminal activity in relation to" the address to be searched"

16

when the only fact that provided any connection between the crime and the residence was the defendant's statement that he lived there). There are several important discrepancies between *Norwood* and the instant case, however. In *Norwood*, an affidavit established that at an unspecified time, an informant advised the police that two people (neither of whom was the defendant) killed a man; that a different source witnessed the defendant offer to pay for the killing and believed the defendant had paid for the killing; and the defendant lived in the location to be searched. *Id*. at 575. The *Norwood* court understandably found no connection to the residence other than the defendant's statement that he lived there. *Id*.

Officer Webb's affidavit made at least three connections between the liquor store robbery (and the alleged use/threat of a firearm in connection with that robbery) and the San Juan residence: (a) shortly after the crime, Defendant fled to the San Juan residence; (b) later the same night, Defendnat returned to, and hid inside, the San Juan residence; and (c) Defendant parked the stolen car he used to get away in the driveway of the residence the same day. Unlike *Norwood*, the affidavit in this case drew a line from the crime to the residence on San Juan.

The Court concluded that there was probable cause to search the residence.

Defendant contends that the Government cannot excuse the Fourth Amendment violation pursuant to the *Leon* good faith exception. *United States v. Leon*, 468 U.S. 897, 905 (1984) (internal quotation marks omitted) (the exclusionary

rule does not bar the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective"). Defendant argues that Officer Webb's affidavit had no meat on its bones and no minimal sufficient evidence of a nexus between the liquor store robbery and firearms being stored at the San Juan residence. A bare bones affidavit is one that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. McPhearson*, 469 F.3d 518, 525-26 (6th Cir. 2006) (internal quotations omitted).

Defendant argues that the April 15, 2022 search warrant does not state that Defendant was known to have participated previously in armed robberies, that Defendant was known to carry firearms, that the Ford Escape drove directly to San Juan from the liquor store, or that he habitually stored illegal proceeds at the San Juan residence. Citing *United States v. Frazier*, 423 F.3d 526, 536-37 (6th Cir. 2005); *United States v. Van Shutters*, 163 F.3d 331, 337-38 (6th Cir. 1998); *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985).

Defendant notes that the affidavit fails to reference: (1) how much time elapsed from the alleged robbery and when Officer Webb observed Defendant at the San Juan residence; (2) any information other than Defendant's presence at the San Juan house to support the conclusion that evidence of a robbery would be found there; and (3) whether Defendant even stayed at the San Juan address. Defendant

asserts that the questionable inferences and baseless conclusions in the affidavit were such that no reasonable officer could conclude that the inferences upon inferences were enough to justify the search of Defendant's home. *See Payton v. New York*, 445 U.S. 573, 585 (1980) ("[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (internal quotations omitted).

To determine whether the *Leon* good-faith exception applies, a court must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. For an officer's reliance on a warrant to have been reasonable, the application must have provided "a minimally sufficient nexus between the illegal activity and the place to be searched." *Brown*, 828 F.3d at 385. The affidavit need not establish a "substantial basis," only "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *United States v. White*, 874 F.3d 490, 497 (6th Cir.2017) (citation and internal quotations omitted). "[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *Id.* at 500.

In the *Frazier* case Defendant relies upon, the court found that "the allegation that the defendant is a drug dealer, without more, was insufficient to establish

probable cause to search the drug dealer's home. *Frazier*, 423 F.3d at 533. After the court applied *Leon*, however, it found that good faith saved the warrant because it was not just an officer's conclusions about the likely location of evidence. *Id.* The Court similarly should find that DPD officers reasonably relied upon the magistrate judge's authorization because, as discussed above, there was "a minimally sufficient nexus between the illegal activity [the liquor store robbery] and the place to be searched [the San Juan residence]." *Brown*, 828 F.3d at 385. Specifically, (a) shortly after the liquor store robbery, Defendant fled to the San Juan residence; (b) later the same night, Defendant returned to, and hid inside, the San Juan residence; and (c) Defendant parked the stolen car he used to get away in the driveway of the San Juan residence the same day.

Accordingly, even if the Court determines that the search warrant was defective, which it has not, the Court applies the exclusionary rule and denies the Motion to Suppress. The evidence is admissible because it was "seized in reasonable, good-faith reliance on [the] search warrant." *Leon*, 468 U.S. at 905.

## VI.   Conclusion

For the reasons stated above,

IT IS ORDERED that Defendant's Motion to Dismiss Indictment [ECF No. 25] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Sever Counts [ECF No. 26] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress [ECF No. 27] is GRANTED.

Date: October 26, 2023          S/DENISEI PAGE HOOD
                                DENISE PAGE HOOD
                                UNITED STATES DISTRICT JUDGE